UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

CASE NO.: 12-60051-CIV-SCOLA

SURETEC INSURANCE COMPANY,

    Plaintiff,

vs.

NATIONAL CONCRETE STRUCTURES,
INC., JAVIER PINO, CHARY PINO, and
JORGE D. TAPIA,

    Defendants.

_____/

## ORDER GRANTING PLAINTIFF SURETEC INSURANCE COMPANY SUMMARY JUDGMENT

Plaintiff SureTec Insurance Company (SureTec) seeks summary judgment against Defendants Javier Pino, Chary Pino, and National Concrete Structures, Inc. (National Concrete), arguing that that these Defendants undisputedly breached the indemnity agreement they made with SureTec. For the reasons set forth below, the Court **GRANTS** summary judgment in favor of SureTec.

### BACKGROUND

The following facts are undisputed. SureTec is a commercial surety that provides construction payment and performance bonds to contractors. National Concrete is a general contractor who applied for payment and performance bonds from SureTec in connection with three construction projects in Miami, Florida. As a condition of SureTec issuing these bonds to National Concrete as principal, Defendants Javier Pino, Chary Pino, Jorge D. Tapia, and National Concrete (collectively, the "Indemnitors") executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of SureTec on March 29, 2011. (DE 36-1 at 2, 8, 13.) The Indemnity Agreement requires the Indemnitors to indemnify SureTec "from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which [SureTec] may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds." (*Id.* at 8.) Following the execution of the

Indemnity Agreement, SureTec issued National Concrete three payment and performance bonds numbered 5070138, 5070316, and 5088731. (*Id.* at 2-3.) These bonds secured National Concrete's performance and payment obligations on the three construction projects, one of which was the New Camillus House Center Project (NCHC Project). (*Id.* at 3-4.)

After issuing these bonds to National Concrete, SureTec received numerous claims against the bonds from various entities, including (1) the owners of construction projects for National Concrete's alleged defective or incomplete work, and (2) subcontractors and suppliers for National Concrete's alleged failure to pay labor, material, and construction costs. (*Id.* at 3-6.) SureTec issued payment to satisfy the various claims against the bonds and incurred costs associated with investigating and resolving these claims. (*Id.*) SureTec also advanced funds to National Concrete to assist it in its efforts to complete the various construction projects. SureTec demanded that the Indemnitors fulfill the terms of the Indemnity Agreement by reimbursing all monies paid to satisfy the claims against the bonds, all costs associated with investigating the claims, and all funds advanced to National Concrete. The Indemnitors have failed to pay.[1]

As a consequence, on November 1, 2011, SureTec sued the Indemnitors in federal court based on diversity jurisdiction. (DE 1.) The Complaint alleges three counts: breach of contract (the Indemnity Agreement) against the Indemnitors (Count I), common-law indemnity against National Concrete (Count II), and equitable subrogation against National Concrete (Count III). SureTec is seeking damages against the Indemnitors in the amount paid to satisfy all claims made against the payment and performance bonds, expenses incurred as a result of issuing the bonds, advanced funds, prejudgment interest, and attorneys' fees.

On August 24, 2012, SureTec moved for summary judgment against Chary Pino, Javier Pino, and National Concrete on the breach-of-contract claim (Count I). SureTec did not move for summary judgment against Tapia because about a month before SureTec moved for summary judgment, Tapia had filed for bankruptcy, which resulted in an automatic stay of the litigation as to him. (*See* DE 34.)

---

[1] SureTec's damages stem entirely from the NCHC Project. (*Id.* at 4, 6-8.) Claims were made on the bonds for the other two projects, but SureTec suffered no principal damages on one of these projects because the contract funds SureTec received from the general contractor equaled the amount SureTec paid out for claims. (*Id.* at 8.) And SureTec has denied the claim on the third project and has not incurred any principal damages yet. (*Id.*)

## ANALYSIS

### 1. Summary-judgment standard

Under Rule 56 of the Federal Rules of Civil Procedure, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). Rule 56 requires a court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1140 (11th Cir. 2007).

**2.     SureTec's breach-of-contract claim**

Before analyzing the merits of this claim, the Court must first decide what law governs. A choice-of-law clause in the Indemnity Agreement requires that Texas law apply. The effect of this clause is governed by Florida choice-of-law rules because a federal court in Florida exercising diversity jurisdiction applies Florida state law. *Liberty Mutual Insurance Co. v. Aventura Engineering & Construction Corp.*, 534 F. Supp. 2d. 1290, 1302 (S.D. Fla. 2008). A contractual choice-of-law provision is valid under Florida law: "[a]n agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's law would contravene a strong public policy of this State." *Southeast Floating Docks, Inc. v. Auto-Owners Insurance Co.*, 82 So. 3d 73, 80 (Fla. 2012). Because no one argues that applying Texas law would contravene any public policy of Florida—let alone a strong one—and because the Court is unaware of how applying Texas law would do so, the Court applies Texas law.[2]

Turning to the merits of SureTec's indemnity claim, Texas courts construe indemnity agreements using the normal rules of contract construction. *Associated Indemnity Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998). The primary aim is to determine the parties' intent. *Id.* If the contract is unambiguous, then the terms of the contract are enforced as written. *Old Republic Surety Co. v. Palmer*, 5 S.W.3d 357, 361 (Tex. App.–Texarkana 1999).

The Indemnity Agreement in the present case is unambiguous and grants broad rights to SureTec. It requires that the Indemnitors indemnify SureTec

> from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which [SureTec] may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds, . . . including, but not limited to, court costs, . . . fees and expenses of attorneys, accountants, adjusters, inspectors, experts, and consultants, whether on salary, retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under this Agreement.

---

[2] Unfortunately, with a few exceptions, the parties mainly cite to Florida law. That SureTec's attorneys cite no Texas law in their initial brief in support of summary judgment is particularly surprising since SureTec, a Texas Corporation, presumably drafted the Indemnity Agreement calling for Texas law to be applied. SureTec's attorneys also fail to mention the choice-of-law provision in the Indemnity Agreement. These omissions by SureTec's attorneys are even more surprising because applying Texas law does not change the result for SureTec, so there is no strategic benefit to SureTec researching and briefing Florida law. What does change is that the Court needed to research governing Texas law without adequate research and briefing by the parties.

4

> . . . In the event of payments by [SureTec], a voucher, affidavit, bordereaux or other evidence of such payments are prima facie evidence of the amount paid, propriety thereof, and of the Indemnitors' liability therefore to [SureTec].

(DE 36-1 at 8.) The Indemnity Agreement gives SureTec "the right to settle, compromise, prosecute, or defend any claim or action brought against [SureTec] or any Indemnitor upon or relating to any bond . . . . [SureTec's] decision with respect thereto shall be binding and conclusive upon the Indemnitors." (*Id.* at 9.) When an indemnity agreement contains provisions like these granting the surety the right to settle claims and to have the indemnitors reimburse the surety for the amount it paid in settlement, those provisions are enforced as written, and the indemnitor is bound to reimburse the surety unless the surety made the settlement payments in bad faith. *Associated Indemnity Corp.*, 964 S.W.2d at 282-85 (Tex. 1998); *Old Republic Surety Co.*, 5 S.W.3d at 361-62.[3]

There is no evidence of bad faith by SureTec in the present case. When National Concrete's financial difficulties prevented it from paying its payroll to continue working on the NCHC Project, National Concrete requested that SureTec (or one of its affiliates) pay all of National Concrete's payroll payments and make payments to National Concrete's laborers, material suppliers, or other vendors necessary for National Concrete to complete the NCHC Project. (DE 36-1 at 6.) SureTec made these payments, which represent SureTec's principal losses, at National Concrete's request. (*Id.*) So it is undisputed that the principal on the bond (National Concrete) knew about, and consented to, all payments SureTec made on National Concrete's behalf. (*Id.*) These payments were therefore not made in bad faith.

Moreover, National Concrete and Javier Pino's bad-faith argument fails to persuade. These defendants argue that SureTec acted in bad faith with respect to National Concrete's settling an affirmative claim against the bond obligee (Coastal Construction Company, the

---

[3] *Associated Indemnity Corp.*, which held that a commercial surety does not owe a common-law duty of good faith to its principal, involved an indemnity agreement that required reimbursing the surety for settlements made in good faith. 964 S.W.2d at 280, 284-85. But in a later case where the indemnity agreement did not require the surety to act in good faith, the Texas Supreme Court rejected a claim that a surety breached the duty of good faith, reasoning that there was no evidence that the surety "contractually agreed to act in good faith." *Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 680 (Tex. 1998). But the analysis underlying this conclusion was brief. *Id.* Although the Indemnity Agreement in the present case does not require the surety to act in good faith, the Court need not decide whether SureTec would be entitled to reimbursement even if it settled the claims on the bonds in bad faith because SureTec undisputedly acted in good faith.

5

general contractor of the NCHC Project), which led National Concrete to sign a change order providing for an additional $500,000 payment for completion of the construction project. National Concrete and Javier Pino argue that the additional $500,000 would not be enough to cover the increased costs from delays in the NCHC project and that signing this agreement therefore put National Concrete in a bind. But this argument is unpersuasive because there is no dispute that National Concrete—not SureTec—signed this agreement and settled National Concrete's affirmative claim against Coastal Construction. National Concrete's negotiating and settling an affirmative claim while it was represented by counsel does not create a factual dispute that SureTec acted in bad faith in settling an affirmative claim for the simple reason that SureTec did not settle the affirmative claim.

Since the Indemnitors do not raise a valid bad-faith claim, SureTec is entitled to reimbursement for its losses as provided in the Indemnity Agreement. With respect to calculating losses, that agreement provides that "a voucher, affidavit, bordereaux or other evidence of [SureTec's] payments are prima facie evidence of the amount paid, propriety thereof, and of the Indemnitors' liability therefore to [SureTec]." (DE 36-1 at 8.) SureTec's affidavit from Scott Olson, the Director of Contract Support Services for SureTec, along with the supporting exhibits, establish that SureTec's principal damages as of August 24, 2012 are $1,774,434.70. (*Id*. at 4-5, 50-60.) The Indemnity Agreement also requires the Indemnitors to reimburse SureTec for its attorneys' fees, consultants' fees, in-house fees, expenses, and costs it incurred because it issued the bonds and sued to enforce the Indemnity Agreement. So the Indemnitors are liable for SureTec's reasonably incurred fees and costs. The last damages SureTec seeks are prejudgment interest, which the Indemnity Agreement provides for at the lesser of 18% or the highest lawful rate under applicable Texas law. (*Id*. at 10.) Because the Indemnity Agreement provides for this interest, the Court will award it. But the Court will reserve ruling on the interest rate used to calculate SureTec's prejudgment interest because SureTec did not brief what interest rate is allowable under Texas law.

The Indemnitors' remaining arguments against awarding SureTec summary judgment do not undercut the Court's conclusion. Except for Chary Pino's argument that the Indemnity Agreement is not a valid contract with respect to her because she received no consideration for signing the agreement, these remaining arguments are based on conclusory statements devoid of factual support. Although the Indemnitors cite to allegations or denials in their pleadings to support these arguments, that does not constitute factual support: Rule 56 of the Federal Rules of

Civil Procedure "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). So the Indemnitors' conclusory statements do not defeat SureTec's properly supported summary-judgment motion. *Aventura*, 534 F. Supp. 2d. at 1293 n.1.

Chary Pino supports her argument that she received no consideration to sign the Indemnity Agreement by averring that she received nothing of value from SureTec for signing. (DE 43 at 5-7; DE 43-2 at 2.) Under Texas law, a party seeking to enforce a contract must prove that an enforceable contract exists, which requires consideration. *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 392 (Tex. App.–Amarillo 2000). But the Indemnity Agreement itself plainly provides that she received consideration:

> WHEREAS, certain bonds, guarantees, obligations of suretyship, undertakings and other instruments in the nature of a bond . . . may have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the Indemnitors, *in whose bonds the Indemnitors do hereby affirm to have a substantial material and beneficial interest; and as a condition precedent to the execution of any and all such bonds, [SureTec] requires execution of this General Agreement of Indemnity;*
>
> NOW, THEREFORE, *in consideration of these premises, and of the execution or continuance or renewal of such bonds, and for other good and valuable consideration,* the Indemnitors . . . jointly and severally agree with, and make this General Agreement of Indemnity in favor of, and for the benefit of, [SureTec].

(DE 36 at 8 (emphasis added).) And since the contract language is unambiguous, the plain terms of the contract control. *Old Republic Surety*, 5 S.W.3d at 361 (holding that if the indemnity agreement "is unambiguous, we will give legal effect to the contract as written"). By signing the Indemnity Agreement, Chary Pino affirmed that she had a "substantial material and beneficial interest" in the bonds being executed. The Indemnity Agreement further provides that SureTec would not execute the bonds unless Chary Pino and the other Defendants signed the Indemnity Agreement (the "condition precedent" language). It is undisputed that SureTec issued the bonds only after she and the other Defendants signed the Indemnity Agreement. So in addition to the agreement reciting that Chary Pino received consideration, the undisputed facts show that SureTec's issuing the bonds was the consideration for the Indemnitors to sign the Indemnity Agreement, mirroring the agreement's plain terms.

Moreover, because Chary Pino's self-serving affidavit—created after SureTec filed its summary-judgment motion—runs counter to the written agreement, the affidavit does not allow Chary Pino to avoid summary judgment being granted against her. To find otherwise ends summary judgment's function as a tool to either winnow out meritless contract cases or decide undisputedly meritorious contract cases without a trial. For example, in a contract case once party X moves for summary judgment, party Y will always be able to submit an affidavit stating that Y did not intend the contract to mean what X says it means, even if Y's affidavit runs counter to the written agreement. If this extrinsic evidence suffices for Y to survive summary judgment because it is an affidavit submitted under the summary-judgment procedure, then summary judgment would never be granted in another contract case. Chary Pino's affidavit fits this pattern precisely. SureTec moved for summary judgment, arguing that the contract's plain terms—which include the plain terms about consideration being present—required the Indemnitors to reimburse it for its losses. Then Chary Pino filed an affidavit stating that she received no consideration for signing the contract, even though the contract's consideration terms can be given their plain meaning only by concluding that Chary Pino did receive consideration. The Court will not allow Chary Pino to undercut summary judgment's important function or the Texas rule that the plain terms of a contract govern. *Cf. Ganske v. Spence*, 129 S.W.3d 701, 706 (Tex. App.–Waco 2004) ("Parol evidence cannot be admitted to add to, vary, or contradict a contract's unambiguous provisions.").

Because the undisputed facts show that the Indemnitors breached the Indemnity Agreement by not reimbursing SureTec for payments it made to satisfy claims against the bonds, SureTec is entitled to judgment as a matter of law on its breach-of-contract claim.

## CONCLUSION

For the reasons set forth above, the Court **ORDERS** the following:

1. SureTec's Motion for Summary Judgment against Defendants Javier Pino, Chary Pino, and National Concrete (DE 35) is **GRANTED**.
2. A judgment of liability is entered in SureTec's favor against Defendants Javier Pino, Chary Pino, and National Concrete because the Court finds that these defendants are jointly and severally liable to SureTec for the losses and costs SureTec incurred in connection with the bond on the NCHC project. The Court reserves jurisdiction to

determine the amount of the following: (1) SureTec's principal damages;[4] (2) prejudgment interest;[5] and (3) reasonable fees and costs for attorneys, consultants, and so on that SureTec incurred as a result of issuing the bonds and suing to enforce the Indemnity Agreement.

**DONE AND ORDERD**, in Chambers, Miami, Florida, January 31, 2013.

ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Designated Magistrate Judge
Counsel of record

Javier Pino
5060 S.W. 154th Place
Miami, FL 33185

National Concrete Structures, Inc.
3149 John P. Curci Drive
A1-2
Pembroke Park, FL 33009

National Concrete Structures, Inc.
8362 Pines Boulevard
275
Pembroke Pines, FL 33024

Jorge D. Tapia
3149 John P. Curci Drive
A1-2
Pembroke Park, FL 33009

---

[4] Although SureTec submitted evidence that its principal damages as of August 24, 2012 were $1,774,434.70, SureTec's affidavit stated that Coastal Construction agreed to a final change order for the NCHC project, which would result in an additional payment to SureTec of over $200,000 and would thus further offset SureTec's principal damages. (DE 36-1 at 4 n.1.) As of August 24, that additional payment had not been made. (*Id.*) But it may have now, so rather than award an incorrect amount of principal damages, the Court's judgment merely establishes that Defendants Chary Pino, Javier Pino, and National Concrete are liable for SureTec's damages.

[5] When SureTec files its motion seeking prejudgment interest, SureTec must research and brief whether the allowable interest rate is 18% or a lesser rate under applicable Texas law.